## WESTERN UNION TELEGRAPH CO. v. SATTERWHITE. (No. 3407.)

Court of Civil Appeals of Texas. Texarkana. Nov. 17, 1927.

1. **Telegraphs and telephones ⛛67(1)—Party can recover damages for negligent delay in delivering telegram, depriving him of opportunity to make advantageous contract.**

A party is entitled to damages for delay in delivering telegram, if through negligence of telegraph company he is deprived of opportunity of making advantageous contract.

2. **Sales ⛛22(1)—Seller's agent's telegram held to be quotation of prices and solicitation of order, without specifying quantity or terms.**

Telegraphic message, sent plaintiff by agent of seller, reading: "Twenty-four Jemima meal now fifty-seven and half. Looks good booking. Act quick"—*held* to be quotation of existing prices and solicitation of an order, without naming size of order or terms.

3. **Telegraphs and telephones ⛛66(4)—Evidence held not to warrant conclusion that delivery of telegram from plaintiff with reasonable diligence would have resulted in purchase of goods at prices quoted earlier in day.**

In action for damages for failure to promptly deliver a telegraphic message, evidence *held* not to warrant trial court in concluding that, under conditions then existing, delivery of message from plaintiff with reasonable diligence would have resulted in his purchase of meal at prices quoted to him by seller's agent earlier in day.

4. **Evidence ⛛244(11)—Testimony that defendant telegraph company's employee had stated that nondelivery of message was fault of company held inadmissible.**

In action for damages for failure to promptly deliver telegraphic message, testimony of addressee of telegram that, when he had made complaint of nondelivery of message, one of employees of defendant telegraph company stated that fault was clearly with company, *held* inadmissible.

Appeal from Houston County Court; Leroy L. Moore, Judge.

Action by B. L. Satterwhite against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Young & Stinchcomb, of Longview, for appellant.

Aldrich & Crook, of Crockett, for appellee.

HODGES, J. This appeal is from a judgment against the appellant for damages for the failure to promptly deliver a telegraphic message. In December, 1925, Satterwhite, the appellee, was engaged in the wholesale grain and grocery business at Crockett, Tex. On the morning of the 23d of that month he received the following message from J. F. Gaither, the Texas sales agent of the Aunt Jemima Mills Company:

"Fort Worth, Texas, 12—23, 1925.

"To B. L. Satterwhite, Crockett, Texas. Twenty-four Jemima meal now fifty-seven and half. Looks good booking. Act quick."

At 1:45 p. m. the same day Satterwhite delivered to the appellant's agent at Crockett the following reply, addressed to Gaither at Fort Worth: "Book five thousand cream twenty-four sixty days." That reply was transmitted to Fort Worth, but was not delivered to Gaither for several days, and after there was a rise in the price of meal. In this suit Satterwhite charges negligence in the failure of the appellant's agents to promptly deliver that message, and claims damages in the sum of $250, because he was thereby deprived of the opportunity of buying the meal at the price as quoted in the message from Gaither. Omitting the formal parts of the plaintiff's original petition, and that which is of no material importance in the discussion of the issues presented in this appeal, he pleaded as follows:

"That the meaning of said message is that the said J. F. Gaither, who was agent for Aunt Jemima Mills Branch, located at the city of St. Joseph, in the state of Missouri, was instructed thereby to book for shipment to plaintiff at Crockett, Texas, 5,000 sacks of Aunt Jemima cream meal, of the weight of 24 pounds each, and that plaintiff had 60 days in which to order

⛛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the same shipped to him. Plaintiff alleges that the said telegram sent by him from Crockett, Tex., to said J. F. Gaither at Fort Worth, Tex., was in response to a telegram sent by the said J. F. Gaither from Fort Worth, Tex., to plaintiff at Crockett, Tex., on the same day, reading as follows: 'Twenty-four Jemima meal now fifty-seven and half. Looks good booking. Act quick'—and signed by the said J. F. Gaither. That said telegram meant that the said J. F. Gaither offered to sell plaintiff Aunt Jemima meal in 24-pound sacks at 57½ cents per sack, and that plaintiff promptly sent his reply thereto, and undertook and intended to purchase from the said J. F. Gaither, as the duly authorized agent of Aunt Jemima Mills Branch, at St. Joseph, state of Missouri, 5,000 sacks of Aunt Jemima cream meal, and plaintiff alleges that, if said telegram had been properly transmitted and delivered to the said J. F. Gaither promptly, he would have purchased from the said J. F. Gaither 5,000 sacks of Aunt Jemima meal, weighing 24 pounds each, for the sum of 57½ cents per sack, and that he would have been allowed 60 days thereafter in which to have said meal shipped to him at his place of business in Crockett, Tex."

The case was tried without a jury, and a judgment rendered in favor of the appellee for $150. The trial judge filed findings of fact, in which are the following:

"I find that the message sent by B. L. Satterwhite to J. F. Gaither at Fort Worth, Tex., was not delivered to him until the 29th day of December, 1925, and that by the use of reasonable diligence it should have been delivered to said J. F. Gaither within a very short time after it was received at Fort Worth, Tex., at the office of the Western Union Telegraph Company.

"I find that, when said telegram was received at Fort Worth, Tex., the market price of Aunt Jemima cream meal was 57½ cents for a 24-pound sack of said meal and that said price remained at 57½ cents per sack until 41 minutes after 2 o'clock p. m. on said 23d day of December, 1925, when the price was increased to 60½ cents per sack.

"I find that, on account of the delay in the delivery of said telegram, plaintiff had no opportunity to buy the said Aunt Jemima cream meal for less than 60½ cents per sack, and that he did not in fact buy the same until the 29th day of December, 1925, at which time he paid the market price, which was 62½ cents per sack, and purchased 5,000 sacks or more of said meal at said price.

"I find that the plaintiff was not informed and did not know of the nondelivery of said telegram until the afternoon of December 24, 1925, and that he then made inquiry at the office of the defendant at Crockett, Tex., and was informed that said telegram had not been delivered.

"I find that, had the plaintiff made his order promptly after receiving notice of the nondelivery of said telegram, he could probably have purchased Aunt Jemima cream meal at 60½ cents per sack, and that he had the opportunity to purchase said meal at said price, and, had he done so then, he would have paid the sum of 3 cents per sack above the quoted price made to him on the 23d day of December, 1925, and that

the difference in the market price amounts to the sum of $150."

The sufficiency of the evidence to show negligence is questioned in this appeal, but we are not prepared to say it was not sufficient to warrant the conclusion of the court upon that issue. In view of the fact that the judgment will be reversed on other grounds, that question will not be discussed.

Appellant contends that, even if there was negligence, no damages should have been allowed, because, if the message from Satterwhite to Gaither had been promptly delivered, there would not have been a completed contract of sale upon the terms mentioned in the message from Gaither to Satterwhite. The letter, it is claimed, was merely a quotation of the then existing market price, and the reply was only an order for booking, which had to be submitted to the company as St. Joseph, Mo., for confirmation before a contract was concluded. On cross-examination Gaither testified:

"It is true that I did not give my local address in my message to Mr. Satterwhite, as I supposed he knew where to find me, or would wire the mill direct, as I was merely posting him on the market."

[1-3] The rule in this state seems to be that a party is entitled to damages in such case if through the negligence of the telegraph company he is deprived of the opportunity of making an advantageous contract. W. U. T. Co. v. True (Tex. Civ. App.) 103 S. W. 1180, and cases there referred to. The question here is, Do the facts bring this case within the rule? In other words, Does the evidence show that Satterwhite's order would have been accepted at the prices mentioned by Gaither, if the delayed message had been delivered within a reasonable time? At 10:06 on the morning of the 23d of December the Aunt Jemima Mills Company sent the following message to Gaither:

"Confirm sales basis' your wire date. Sell only subject confirmation account yesterday's report. Market very bullish; corn open two higher, wheat six higher, confirm Simmons shorts."

That message would indicate that, on account of the upward tendency of prices, Gaither should thereafter sell only subject to approval of orders by the company. Satterwhite's message was delivered at Crockett for transmission at 1:45 p. m. The evidence does not clearly show when it reached Fort Worth. A little less than one hour after it was filed, Gaither received a message from his company saying that meal had advanced to 60½ cents per sack of 24 pounds. The evidence does not show whether Satterwhite's order could have been communicated by Gaither to his company before that rise took place or not, or that, if communicated promptly, it would have been accepted at the prices and terms upon which the offer was made. We

think Gaither's message to Satterwhite should be construed as a quotation of existing prices and the solicitation of an order, without naming the size of the order or the terms. Satterwhite's message was an order for a definite quantity at the quoted price, but containing terms not implied in Gaither's message. It was upon condition that he was to be permitted a delay for as much as 60 days in ordering the goods shipped. We do not think the evidence warranted the trial court in concluding that under the conditions then existing the delivery of the message from Satterwhite with reasonable diligence would have resulted in a purchase of the meal at the prices quoted to him earlier in the day. Gaither, a witness for the appellee, did not indicate that such a probability existed. He apparently was in a better position than any other witness to testify upon that issue. Satterwhite could only state his conclusions, based upon former dealings, under conditions probably different from those existing at that time.

[4] Over the objection of the appellant, Gaither was permitted to testify that some days later, when he made complaint of the nondelivery of the message from Satterwhite, one of the employees of appellant stated that the fault was clearly with the company. That testimony was inadmissible, and should have been excluded.

The judgment will be reversed, and the cause remanded for a new trial.